IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISHA M WALTON, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>KEE ANA SMITH, et al.,<br><br>    Defendants. | Case No. 23-cv-04843-MMC<br><br>**ORDER DISMISSING FOURTH AMENDED COMPLAINT** |

Before the Court is plaintiffs' "Fourth Amended Complaint" ("4AC"). Where, as here, a party proceeds in forma pauperis, the district court, pursuant to 28 U.S.C. § 1915(e)(2), must "dismiss the case" if the plaintiff "fails to state a claim on which relief may be granted." See 28 U.S.C. § 1915(e)(2)(B). The Court next turns to the question of whether the 4AC states a claim on which relief may be granted.

**DISCUSSION**

By their 4AC, plaintiffs allege that subsequent to their 16-year-old daughter's false report that her father, plaintiff Justin Walton, had molested her, plaintiffs wrongfully lost custody of their children. (See 4AC ¶ 67, 70). Based thereon, plaintiffs assert eight "Counts" against one or more of twenty-eight named defendants.[1]

**A. Rooker-Feldman Doctrine**

At the outset, the Court addresses whether certain of plaintiffs' claims are excluded from federal review under what has come to be known as the Rooker-Feldman

---

[1] There are twenty-eight "Defendants" listed in an introductory section of the 4AC titled "Parties." In the body of the 4AC, however, additional names are included as what appear to be defendants. (See, e.g., 4AC ¶ 443) (referencing former President Joseph Biden).

doctrine, the purpose of which is to "protect state judgments from collateral federal attack." See Doe & Assocs. Law Offs. v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001).

Under the Rooker-Feldman doctrine, "federal district courts lack jurisdiction to review the final determinations of a state court in judicial proceedings," even where "the challenge to the state court decision involves federal constitutional issues." See id. at 1029. The doctrine bars a district court not only from exercising jurisdiction over "a direct appeal from the final judgment of a state court" but also "from considering de facto appeals—suits in which the adjudication of the federal claims would undercut the state ruling." See Searle v. Allen, 148 F.4th 1121, 1128 (9th Cir. 2025) (internal quotations and citations omitted).

District courts also lack jurisdiction over "any issues that are 'inextricably intertwined' with issues in [a] de facto appeal." See Kougasian v. TMSL, Inc., 359 F.3d 1136, 1142 (9th Cir. 2004). Consequently, once a district court determines a lawsuit contains claims that are subject to the Rooker-Feldman doctrine, it must then determine which issues are "inextricably intertwined" with those claims. See Noel v. Hall, 341 F.3d 1148, 1158 (9th Cir. 2003) (holding "[o]nly when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play"). The Court, therefore, begins by analyzing whether any of plaintiffs' claims are barred by the Rooker-Feldman doctrine as de facto appeals and then proceeds to determine whether any claims are inextricably intertwined with those de facto appeals.

As set forth below, the Court finds the claims brought under 42 U.S.C. § 1983 (Count III),[2] 42 U.S.C. § 1985 (Count IV),[3] 42 U.S.C. § 1986 (Count V),[4] and 28 U.S.C.

---

[2] Count III is titled "42 U.S.C. § 1983 Civil Action for Deprivation of Rights under Color of Law." (See 4AC at 57:15-16).

[3] Count IV is titled "42 U.S.C. § 1985 Conspiracy to Interfere with Civil Rights." (See 4AC at 62:6-7).

[4] Count V is titled "Action for Neglect to Prevent 42 USC 1986." (See 4AC at

2

§ 2403 (Count VIII),[5] as well as under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count VI),[6] to the extent those five counts are asserted against Judge Susan M. Breall, Judge Monice F. Wiley, and Judge Braden C. Woods (collectively, "State Court Judges"), constitute de facto appeals, and finds those causes of action, to the extent asserted against the other defendants named therein, constitute claims that are inextricably intertwined with said de facto appeals.

**1. Counts III-VI**

Plaintiffs allege the State Court Judges took "overt steps in furtherance of [a] conspiracy against [plaintiffs'] rights" (see 4AC ¶ 337) by "issu[ing] orders in a case over which the juvenile court ha[d] no subject-matter jurisdiction" (see 4AC ¶ 327) resulting in "physical and psychological trauma" (see 4AC ¶ 406). Based thereon, plaintiffs bring claims against the state court judges under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and RICO. (See 4AC at 49:18-20).

Cases addressing the Rooker-Feldman doctrine look to "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." See Searle, 148 F.4th at 1128 (internal quotation and citation omitted). "If the injury alleged resulted from the state court judgment itself," the district court lacks jurisdiction. See Bianchi v. Rylaarsdam, 334 F.3d 895, 901 (9th Cir. 2003) (internal quotation and citation omitted).

Here, in Counts III-VI, as asserted against the State Court Judges, plaintiffs are, in essence, alleging the above-referenced state court orders, assertedly issued by judges without jurisdiction to so rule, are themselves legal wrongs from which plaintiffs' injuries

---

66:22-23).

[5] Count VIII is titled "28 U.S.C. §2403 Constitutional Challenge [,] Violation of the Equal Protection Clause of the Fourteenth Amendment." (See 4AC at 72:8-10).

[6] Count VI is titled "Violation RICO Act [,] 18 U.S.C. § 1961-1986 Racketeer Influenced and Corrupt Organizations Act RICO (Human Trafficking) Under Title IV-E." (See 4AC at 69:1-4).

are alleged to flow. The Rooker-Feldman doctrine bars such claims. See id.; see also Doe v. Mann, 415 F.3d 1038, 1042 n.6 (9th Cir. 2005) (finding "*Rooker–Feldman* applies where the plaintiff in federal court claims that the state court did not have jurisdiction to render a judgment"). The Court next turns to whether Counts III-VI, as alleged against the other defendants named therein, constitute claims that are inextricably intertwined with such de facto appeals.

A federal claim is "inextricably intertwined" with a state court judgment when it "succeeds only to the extent that the state court wrongly decided the issues before it." See Cooper v. Ramos, 704 F.3d 772, 779 (2012) (internal quotation and citation omitted). Here, plaintiffs allege the other defendants participated in a "conspiracy" with the State Court Judges to deprive them of their "rights to due process, a fair trial, and ultimately to the care and companionship of [their] children" (see, e.g., 4AC ¶ 96; see also 4AC ¶¶ 458-59 (alleging "corrupt enterprise" that "directly injured the plaintiffs' interests in their children's care and companionship" and that removed children "using due process violations")). Such claims are inextricably intertwined with the above-discussed de facto appeals. In essence, plaintiffs are alleging they were deprived of their federal civil rights as a result of the manner in which the State Court Judges conducted the proceedings and entered judgment, which claims cannot succeed without a showing that "the state court wrongly decided the issues before it." See Cooper 704 F.3d at 779 (internal quotation and citation omitted). The inextricable intertwining of said claims with the state court judgments is further demonstrated by plaintiffs' allegations that they bring their claims "because of injury and damages they have endured" and that "[t]hese claims are related to the matters related to case[ ] numbers - JD22-3147 & JD22-3070C/D/E/F/G/H, located at Unified Family Court of the San Francisco Superior Court, Juvenile Dependency Court." (See 4AC ¶¶ 49-51).

Accordingly, Counts III-VI as alleged against all defendants are barred under the Rooker-Feldman doctrine and, thus, subject to dismissal.

Further, such dismissal will be without leave to amend, both because any factually

1  consistent amendment would be futile as barred under the Rooker-Feldman doctrine, see
2  Reddy v. Litton Indus., Inc., 912 F.2d 291, 297 (9th Cir. 1990) (holding "amended
3  complaint may only allege other facts consistent with the [previous pleadings]") (internal
4  quotation and citation omitted); see also AE ex rel. Hernandez v. Cnty. of Tulare, 666
5  F.3d 631, 636 (9th Cir. 2012) (holding district court does not abuse discretion in denying
6  leave where "amendment would be futile"), and because plaintiffs have twice been
7  instructed as to deficiencies in their pleadings pertaining to the Rooker-Feldman doctrine
8  and have failed to cure such deficiencies, see id. (holding district court does not abuse
9  discretion in denying leave where "plaintiff has failed to cure the complaint's deficiencies
10 despite repeated opportunities").

### 2. Count VIII

In Count VIII, plaintiffs seek "a declaratory judgment that Title IV-E of the Social Security Act is unconstitutionally vague as applied to Plaintiff, violating the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment." (See 4AC ¶ 591a).[7] Such claim likewise is barred by the Rooker-Feldman doctrine, as plaintiffs' assertion of unconstitutionality arises out of the state court's acceptance of particular arguments and subsequent rendering of adverse judgments. (See 4AC ¶¶ 503-504). In other words, according to plaintiffs, the State Court Judges erred, the other defendants named in Counts III-VI conspired in the error, and this Court should announce that error by finding the challenged proceedings were unconstitutional. In short, plaintiffs seek precisely the sort of federal intervention the Rooker-Feldman doctrine bars. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983) (finding district court lacks jurisdiction over claims challenging state court judgments "even if those challenges allege

---

[7] Plaintiffs do not list the defendants to each claim under the claim itself. Rather, under each defendant's name, plaintiffs list the particular claims they bring against that defendant. (See, e.g., 4AC at 24:26-28). Although the above claim is not listed under the name of any defendant, the Court assumes it is brought against all the defendants against whom Counts III-VI are brought. (See 4AC ¶ 479) (incorporating "all preceding paragraphs").

1 that the state court's action was unconstitutional").

Accordingly, Count VIII is barred under the Rooker-Feldman doctrine and, thus, subject to dismissal.

Further, such dismissal will be without leave to amend as additional allegations would not cure the deficiency. See AE ex rel. Hernandez, 666 F.3d at 636 (holding district court does not abuse discretion in denying leave where "amendment would be futile").

### B. Remaining Claims

The Court next considers whether plaintiffs can proceed on their remaining claims, and, as set forth below, finds each of those claims, namely, Count I,[8] Count II,[9] and Count VII,[10] is subject to dismissal.

#### 1. Count I

In Count I, plaintiffs bring a claim under the Federal Tort Claims Act ("FTCA"). The FTCA "waives the sovereign immunity of the United States for certain torts committed by government employees where a claim would exist under state law if the government were a private person." See Lesouer v. United States, 21 F.3d 965, 967 (9th Cir. 1994). Consequently, "violations of federal law are not actionable under the FTCA because any liability would arise under federal rather than state law." See Firebaugh Canal Water Dist. v. United States, 712 F.3d 1296, 1303 (9th Cir. 2013) (internal quotation and citation omitted).

Here, plaintiffs allege defendants Xavier Beccera, Rachel Levine, and Merrick B. Garland "owed a duty of care to [plaintiffs] under state law . . . [arising] from the federal government's role in overseeing the child welfare program." (See 4AC ¶¶ 349-350). In

---

[8] Count I is titled "28 U.S.C. § 171 Federal Tort Claims Act (FTCA)." (See 4AC at 52:11).

[9] Count II is titled "Bivens Claim." (See 4AC at 56:8).

[10] Count VII is titled "18 U.S.C. § 248 FACE Act Violations." (See 4AC at 71:9).

1   particular, plaintiffs allege, said defendants "failed to supervise state or county
2   compliance with federally mandated child welfare programs (such as those under the
3   Child Abuse Prevention and Treatment Act (CAPTA) or Title IV-E of the Social Security
4   Act)." (See 4AC ¶ 351).  According to plaintiffs, said defendants should have withheld
5   funding from noncompliant states and counties and, because of their failure to do so,
6   plaintiffs suffered emotional distress and loss of consortium.  (See 4AC ¶¶ 363, 366-367).

Plaintiffs' claim is predicated on alleged violations of the Social Security Act, Child Abuse Prevention and Treatment Act, and Administrative Procedure Act (see 4AC ¶ 358); based on such alleged violations, plaintiffs seek relief.  The cited statutes are, however, federal laws, not state laws.  Moreover, there is no analogous claim for liability "exist[ing] under state law if the government were a private person," see Lesouer, 21 F.3d at 967, because private persons do not supervise the withholding and disbursement of federal funds, see Woodbridge Plaza v. Bank of Irvine, 815 F.2d 538, 543 (9th Cir. 1987) (holding "FTCA does not apply" where conduct alleged "is not reasonably analogous to any claim for which a private person would be liable in California").

Accordingly, Count I is subject to dismissal.

Further, such dismissal will be without leave to amend as no additional allegations could be made to transform the alleged duty of the federal government to withhold payments into one arising under state law.  See AE ex rel. Hernandez, 666 F.3d at 636 (9th Cir. 2012) (holding district court does not abuse discretion in denying leave where "amendment would be futile").

**2. Count II**

In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), the United States Supreme Court "held that, in appropriate cases, government officials may be held personally liable for violations . . . of citizens' constitutional rights," where such violations are "committed under the color of government authority."  See Adams v. Johnson, 335 F.3d 1179, 1183 (9th Cir. 2004).  Subsequent to the Supreme Court's decision in Bivens, courts have referred to "claims for money

7

1  damages against individual federal officials based on constitutional violations where no
2  federal statute authorized such a suit" as "Bivens claims."  See Western Radio Servs. Co.
3  v. U.S. Forest Serv., 578 F.3d 1116, 1117 n.1 (9th Cir. 2009).

4  In assessing a Bivens claim, courts engage in a "two-step inquiry." See Hernandez
5  v. Mesa, 589 U.S. 93, 102 (2020). The court first asks whether the claim "arises in a new
6  context or involves a new category of defendants," and, if so, "whether there are any
7  special factors that counsel hesitation about granting the extension." See id. (internal
8  quotations, citations, and alterations omitted).  A case presents a new context where it
9  "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme]
10 Court."  See id. (internal quotation and citation omitted).  Although there is not an
11 "exhaustive list of factors that may provide a reason not to extend *Bivens*," the Supreme
12 Court has explained that "central to [this] analysis are separation-of-powers principles."
13 See id. (internal quotations and citations omitted).  "If there is even a single reason to
14 pause before applying *Bivens* in a new context, a court may not recognize a *Bivens*
15 remedy."  Egbert v. Boule, 596 U.S. 482, 492 (2022) (internal quotation and citation
16 omitted).

17 Here, against defendants Kamala Harris, Merrick B. Garland, Xavier Becerra, and
18 Rachel Levine, plaintiffs bring "Bivens actions for . . . due process violations because
19 they actively tacitly endorsed state misconduct in administering Title IV-E programs."
20 (See 4AC ¶ 376).  While the 4AC includes new facts about the administration of Title IV-E
21 programs, it does not allege any facts suggesting this case does not present a "new
22 context" for Bivens liability.  Indeed, to recognize Bivens liability for endorsement of state
23 misconduct would raise separation-of-powers issues.  See Wilder v. Virginia Hosp. Ass'n,
24 496 U.S. 498, 509 n.9 (1990) (holding "Congress rather than the courts controls the
25 availability of remedies for violations of statutes"), abrogated on other grounds by
26 Gonzaga Univ. v. Doe, 536 U.S. 273 (2002).

27 Accordingly, Count II is subject to dismissal.
28 Further, dismissal will be without leave to amend as plaintiffs have previously been

informed of this deficiency in their Bivens claims and have failed to cure such deficiency. See AE ex rel. Hernandez, 666 F.3d at 636 (holding district court does not abuse discretion in denying leave where a "plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities").

### 3. Count VII

The Freedom of Access to Clinic Entrances Act of 1994 ("FACE Act") was passed in response to "[a] nationwide campaign of anti-abortion blockades, invasions, vandalism and outright violence." See S. Rep. No. 103-117, at 3 (1993) (detailing "36 bombings, 81 arsons, 131 death threats, 84 assaults, two kidnappings, 327 clinic invasions, and one murder"). To stem such violence, the FACE Act provides a private right of action against whoever (1) "[b]y force or threat of force or by physical obstruction"; (2) "intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person"; (3) "because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." See 18 U.S.C. § 248(a)(1), (c)(1).

Here, in Count VII, plaintiffs allege they "are the victims of a FACE Act violation because as a result of their treatment by DCYF [Department of Children, Youth and Their Families],[11] they are now afraid to go to the doctor or any reproductive health clinic." (See 4AC ¶ 472). The alleged conduct constituting such violation, namely, a social worker's removal of a newborn child from a parent's care (see 4AC ¶¶ 154, 475-76), is not, however, the type of conduct the FACE Act was enacted to remedy.

Accordingly, Count VII is subject to dismissal.

Further, such dismissal will be without leave to amend as additional allegations would not cure the deficiency. See AE ex rel. Hernandez, 666 F.3d at 636 (holding district court does not abuse discretion in denying leave where "amendment would be

---

[11] The above claim is brought against a number of named defendants, including social workers, lawyers, and public officials.

futile").

## CONCLUSION

For the reasons stated above, the Fourth Amended Complaint is hereby DISMISSED without further leave to amend.

**IT IS SO ORDERED.**

Dated: October 7, 2025

MAXINE M. CHESNEY
United States District Judge